LEMUEL BROWN *et al.*

*v.*

NATHANIEL J. BROWN.

*Filed at Ottawa October 29, 1894.*

1. EVIDENCE—*to set aside a deed—sufficiency.* Testimony of a party that property delivered to him was not the consideration for a deed, but that the deed was made to defeat an attachment, is not sufficient to overcome the testimony of the adverse party, corroborated by a disinterested witness, that the consideration of the deed was the transfer of such property to him.

2. DEED—*what not deemed inadequacy of consideration.* A deed of the interest of an heir in the property of a deceased person in consideration of the transfer of certain horses and harness will not be rescinded for inadequacy of consideration, where it appears that at the time of the transfer the estate was encumbered and titles imperfect, so as to render such interest of little value, although it has subsequently become of great value.

3. TRUST—*mere agency not a relation of trust.* A power of attorney given by one heir to another to facilitate the sale of lands in which both are interested, and an agency to manage the property, create no such relation of trust or confidence as will preclude the latter from purchasing from the former, in the absence of false representations or fraud.

4. LACHES—*long delay to attack deed will bar relief.* A grantor of an interest in an estate, who, for more than twenty-six years after the execution and delivery of the deed and its recording, fails to attack it, when he knows, or by the exercise of ordinary diligence could know, that the grantee is in control of the property under the deed, is guilty of such *laches* as will prevent relief.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

EDWARD ROBY, for plaintiffs in error.

CAMPBELL & CUSTER, for defendant in error.

CRAIG, J.: On the 19th day of December, in the year 1862, Benjamin F. Brown died in Cook county, intestate, unmarried and without issue. At the time of his death he owned town lots in Lemont, and lands in Cook and other counties in that portion of the State. He also owned

lands in the State of Wisconsin. He also left some personal property and $994.50 in money. The lands of the deceased were encumbered with mortgages and taxes, and the titles to many of the tracts claimed by him were imperfect. He left as his heirs eight brothers and sisters, Lemuel Brown, one of the complainants, being one, and Nathaniel J. Brown, the defendant, another.

On the 16th day of February, 1863, Nathaniel J. Brown was appointed administrator of the estate of Benjamin F. Brown, deceased, in the county court of Cook county, filed bond, and duly qualified as such administrator. After the appointment, Nathaniel J. Brown acted as administrator until April 7, 1864, when he resigned, his letters of administration were revoked, and Joseph Brown, his brother, was appointed administrator *de bonis non* upon the estate of the deceased, and qualified as such. Immediately after the appointment the defendant turned over to said administrator *de bonis non* all of the money then remaining in his hands as such administrator, belonging to the estate of Benjamin F. Brown, deceased, amounting to $344.75, and also turned over all of the books and papers belonging to said estate, and also paid to him the sum of $464.65, which was the appraised value of the personal property inventoried as belonging to the estate of said Benjamin F. Brown. On March 21, 1865, Joseph Brown rendered to the county court of Cook county his final account as such administrator, which was approved, the estate was declared settled and the administrator discharged.

On the 7th day of August, 1865, Lemuel Brown and Catharine L. Brown conveyed, by deed of that date, to Nathaniel J. Brown, all their right, title, interest, etc., in and to all the pieces, lots and parcels of land owned by Benjamin F. Brown, deceased, or in which they had any interest, legal or equitable, at the time of his death, except such pieces as they had theretofore conveyed to divers persons, intending to convey all the interest said

Lemuel Brown acquired as heir of said deceased, the premises thereby conveyed lying in the States of Illinois and Wisconsin. On the 18th day of December, 1865, the deed was duly recorded in the recorder's office of Cook county. The deed remained unchallenged until this bill was filed to set it aside, by Lemuel and Catharine L. Brown, on the 25th day of November, 1891. The grounds relied upon to set aside the deed are stated in the bill as follows:

"Your orator further shows that recently, and within about a year last past, said Nathaniel J. Brown has pretended and claimed that on the 7th day of August, A. D. 1865, the said Nathaniel J. Brown bought of and from your orator, Lemuel Brown, and your oratrix, Catharine L. Brown, his wife, all the right, title and interest of them, and each of them, in and to all the lands owned by the said Benjamin F. Brown, or in which he, the said Benjamin F. Brown, had any interest at the time of his death; and that on that day, by deed of that date, for a small or nominal consideration, your orator, Lemuel Brown, and your oratrix, Catharine L. Brown, his said wife, conveyed unto him, the said Nathaniel J. Brown, all the right, title and interest of them, and each of them, in and to said real estate of said Benjamin F. Brown, deceased, and that such deed was recorded in the recorder's office of Cook county prior to the great fire of October 8 and 9, 1871. Your orators show that the records of Cook county were destroyed in the great fire of October 8 and 9, 1871, and their contents are unknown to your orators, though your orators are informed and believe that some such deed appears from the indexes to such records preserved in the hands of private persons, but your orators cannot tell its contents if such instrument did exist. Your orators charge that no such sale was ever made, and that no such deed was ever given by them. Your orators further show that on the date of the pretended deed, to-wit, the 7th day of August, 1865, the real estate of the said Benjamin F.

Brown was worth a very large sum of money, to-wit, above $100,000, and the share of your orator, Lemuel Brown, therein was worth upwards of $12,000, as your orators well knew and believed, though they did not know all its circumstances, as the said Nathaniel J. Brown had had full charge of said estate in lands, stock, etc., and the increase, rents and profits thereof, fixing values and prices, and selling the lands and chattels without consultation with your orator or oratrix, and so leasing many portions of the land for large sums of money, your orators believing that he, being on the spot, was acquainted with the circumstances and values better than they were, and trusting him to make the sales and leases thereof for the best prices that could be obtained. Your orators further show that said Nathaniel J. Brown now pretends that he has in his hands such deed, as aforesaid, from your orators, bearing date in August, 1865, and that thereunder he can hold all the right, title and interest of your orator, Lemuel Brown, in and to the said real estate of said Benjamin F. Brown, in his own right and adversely to your orators, and that the dower of your oratrix, Catharine L. Brown, has been thereby released to him as to all of said lands. Your orators show that if any such deed ever was made it was not executed by your oratrix, Catharine L. Brown, or so acknowledged by her, and if executed by your orator, Lemuel Brown, it was under some mistake and without knowledge of its contents, and only for the purpose of assisting said Nathaniel J. Brown in the best management and conduct of the estate for the benefit of your orator, and if any such deed was in fact made, it was without consideration, and was in terms for a nominal or grossly inadequate consideration, and if any such deed was given, the circumstances had wholly passed from the memory of your orator, Lemuel Brown, many years ago, and said Nathaniel J. Brown has made no claim of right against your orator under any such deed until within two years last past, and has never recorded the same since the

records of deed were destroyed, as aforesaid. Your ora-
tors further show that Nathaniel J. Brown has refused to
produce or show such pretended deed unto your orators,
or either of them, yet claims to have such deed, and that
such deed was recorded in the office of the recorder of
deeds of said Cook county. And your orators further
show, on information and belief, that such pretended deed
was by said Nathaniel J. Brown recorded in the office of
the recorder of deeds in Cook county prior to the great
fire ; and they further show that such record, and the evi-
dence thereof remaining, is a cloud on the title of said
Lemuel Brown to his interest and share of said estate of
said Benjamin F. Brown, and that any title or appearance
of title in said Nathaniel J. Brown, by or under such deed,
is held by him in trust for your orator, Lemuel Brown, and
for your oratrix, Catharine L. Brown, as to her right of
dower in such land as the wife of said Lemuel Brown."

We do not understand that complainants in the bill
seek to recover from the defendant the proceeds of any
part of the personal property or money left by Benjamin
F. Brown at the time of his death. Indeed, as to the
personal estate, it was settled in due course of adminis-
tration in the county court of Cook county, and the ad-
judication there had may be regarded as final as to that
property. The sole purpose of the bill, as we understand
it, is to set aside the deed of August 7, 1865, in which the
complainants conveyed all their interest in the real estate
of Benjamin F. Brown, deceased, to the defendant.

From the allegations of the bill it is left in much un-
certainty upon what ground complainants rely to defeat
the deed. They first allege that no such deed was ever
given by them. They then allege, if such deed was made
it was not executed by Catharine L. Brown. It is then
alleged, if executed by complainant Lemuel Brown it
was under some mistake and without knowledge of its
contents. Next, that the deed was without considera-
tion. Then it is alleged that the deed was for a nominal

or greatly inadequate consideration. Lastly it is alleged, if any such deed was given the circumstances had wholly passed from the memory of complainants many years ago. There is also an allegation that at the date of the deed the real estate of Benjamin F. Brown was worth $100,000, and complainants' interest was worth $12,000. But, disregarding the seeming inconsistency of the allegations of the bill, and their uncertainty, have the complainants shown any ground for the relief prayed for in the bill?

In regard to the execution of the deed of August 7, 1865, by the complainants, that is no longer a question in dispute. The complainants, in their testimony, both admit that they executed the deed, and the evidence shows that it was recorded on the 18th day of December, 1865, in the recorder's office of Cook county. Anson B. Jenks testified that he saw the deed, and that it was in the handwriting of William S. Brown. Whether the deed was executed on the day it bears date is not a material or an important question. It is enough that it was executed before December 18, the day of its record. It may therefore be regarded as a settled fact that prior to December 18, 1865, the complainants conveyed, by deed in proper form, all the interest owned by them in the lands of which Benjamin F. Brown died seized, to the defendant, Nathaniel J. Brown.

We will next inquire whether the deed was made without consideration, as claimed in the bill. Upon this point the defendant testified : "I remember a quit-claim deed made by Lemuel Brown to myself, which has been spoken of here. William S. Brown wrote that deed. It was written in Lemont. Lemuel Brown signed it. I know that he signed it, for I saw him do it. The consideration that was paid by me to him for that deed was, that I turned over to him five large quarry horses and five harnesses, and he gave me a little back. I do not recollect exactly how much." On cross-examination the witness further testified : "He said he was going to start a big

farm, and wanted to get up a couple of big teams to raise wheat or something. He was in Lemont a few days at that time. I could not say how many; long enough to examine the horses before he bought them. He looked at them, and picked out the harnesses, and arranged the whole deal, and when the deed came back I sent a man out with them, and he acknowledged the receipt of the horses over in Iowa, in writing. Those horses were over at Singer & Talcott's quarry. It was just after they had shut down the quarry. The horses were standing in the barn, and I bought them from Singer & Talcott and turned them over to him. This negotiation for the selling of the horses and the selling of his interest by Lemuel was all oral—there was no writing."

The testimony of the defendant is confirmed by that of Daniel B. Brown, who testified in regard to a conversation he had with Lemuel, in substance as follows: "I was in Iowa to see him, about 1871, and he said: 'What made you sell out so cheap your interest? You misled me in that act, and I sold cheap too.' At that time I arrived there in Iowa in the morning and stayed until towards evening. I left the latter part of the day. I went there to see him personally. * * * In my conversation with Lemuel he said that he had sold his interest to Nathaniel J. Brown, of Lemont. I do not recollect that he said anything about having conveyed the property to him. The whole conversation went to show that he had sold, and received his pay. He told me about what he received. I don't recollect his saying that he had received his pay or he had not, but the conversation was that he had sold and got his pay. He received property that he estimated at about $400. What he said he had sold to N. J. Brown was his interest in the estate of B. F. Brown. I suppose the interest he claimed was his proportion, according to the rest of the heirs, as an heir of B. F. Brown."

Lemuel Brown denies that the horses and harness formed the consideration for the deed, but says that one Roswell Carter was attaching his property, and that the deed was made and dated back in order to defeat the attachment. We do not think the testimony of complainant is sufficient to overcome the testimony of the defendant, corroborated as it is by a disinterested witness.

Much has been said in regard to the consideration being inadequate. The complainants testified that the interest held by them in the estate of Benjamin F. Brown, deceased, was of the value of $12,000; that the whole estate, at the time of Benjamin F. Brown's death, was worth $100,000. They were not familiar with the condition and value of the estate, and their evidence is not sustained by the other evidence in the record. A. B. Jenks, a nephew of both complainants and defendant, who was familiar with the situation and value of the estate, testified that the tract upon which the "mansion house," so called, stood, had been conveyed away by B. F. Brown in 1862; that there were mortgages on the property aggregating $17,800; that he thought then, and thinks now, that if it had been necessary to pay all the encumbrances the estate would not have paid them. Speaking of the inventory of the property, the witness testified: "I have read the inventory of the estate of Benjamin F. Brown filed by N. J. Brown, but I cannot remember all of that description. I have referred to some of that property,—I think to a large portion of the property described in that inventory. He never had a deed to it at all. I said that he had a large quantity of deeds, covering eight thousand acres, and that is the way the eight thousand acres is made up in the inventory. To a large portion of that property he had no title at all. The way I know was, that I investigated it somewhat." From this and other evidence in the record it is apparent that, owing to imperfect titles and encumbrances, the interest

of complainants in the estate of Benjamin F. Brown at the time the deed was executed, in 1865, was of but little value.

It is said that the defendant, at the time the deed was made, was the agent of complainants, and a relation of trust existed between the parties. The complainants resided in Iowa and the defendant resided in Cook county, and the property of Benjamin F. Brown, deceased, was in his charge. He had to make provision each year for the payment of taxes, and in order to raise funds it became necessary to sell portions of the property. A few lots in Lemont, on different occasions, were sold for that purpose. In order to facilitate the sale of lots when necessary, in 1864 the complainants gave the defendant a power of attorney, under which he acted until the deed was made to him, in 1865. No such relation of trust or confidence was created by this power of attorney, or by the agency exercised by defendant over the property of the complainants, as would preclude the one from purchasing from the others, and no reason is perceived why a sale should be declared invalid in the absence of false representations or fraud on behalf of the defendant in reference to the property.

But, independently of other considerations, the *laches* of complainants precludes a recovery. Where a party has slept upon his rights, or acquiesced for a great length of time, a court of equity will refuse relief. The rule adopted in *Carpenter* v. *Carpenter*, 70 Ill. 457, *Dempster* v. *West*, 69 id. 613, *Walker* v. *Carrington*, 74 id. 446, and other like cases, applies here. As has been seen, the deed was made in August, 1865, and recorded in December, 1865, but this action was not brought until November, 1891. For a period of over twenty-six years complainants acquiesced in the conveyance. The complainants pretend ignorance of the fact that defendant was claiming under the deed. They knew the deed had been executed and delivered. They received a consideration for the deed.

They knew, or at least were bound to know, the deed was on record. They also knew, or by the exercise of ordinary diligence might have known, that the defendant was in the control of the property under the deed. There was therefore no excuse for a want of knowledge that the defendant was claiming under the deed. Moreover, the complainant Lemuel Brown admits, in his evidence, that he learned that the defendant was claiming under the deed after his return from Iowa, which was nine or ten years ago. After learning of that fact he allowed seven years to intervene before bringing an action. The delay was inexcusable.

The decree of the Superior Court will be affirmed.

*Decree affirmed.*