## Timothy C. Clohesey et al. v. George W. Spencer et al.

### Gen. No. 13,122.

1. FINDINGS OF CHANCELLOR—*when disturbed on review.* No special weight is given to the findings of a chancellor upon review where there is no conflict in the evidence and no occasion for the chancellor to judge of the credibility and weight with respect to witnesses, but the Appellate Court will review the evidence and

draw its own conclusions therefrom without regard to those adopted by the chancellor.

2. LACHES—*when defense of, need not be pleaded.* Where laches appears from the bill of complaint, the question of laches will be considered by the court as affecting the right to relief regardless of whether the defense of laches is interposed by answer or otherwise.

3. FRAUDULENT CONVEYANCE—*right of son to give services to father.* *Held*, from the evidence in this case, that the labor and skill given by a son to his father did not constitute a fraud upon creditors, either actual or constructive.

Creditor's bill. Error to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1906. Reversed and remanded. Opinion filed May 28, 1907.

**Statement by the Court.** This writ of error brings before us for review a decree of the Superior Court to the effect that unless the claims of the creditors of David T. Clohesey be paid within thirty days, together with trustee's and attorneys' fees, a receiver be appointed to take possession of the printing plant described in the bill, to proceed forthwith to sell the same or so much thereof as may be necessary to pay the amount of all claims found due and owing and costs and expenses of this proceeding.

On December 28, 1904, George W. Spencer filed his creditor's bill in the Superior Court of Cook county, which, as subsequently amended by amendment filed June 11, 1906, alleged that he was a judgment creditor of David T. Clohesey on a judgment upon which an execution had been duly issued and returned, "no property found and no part satisfied;" that in 1886 David T. Clohesey and George H. Wallace were conducting a printing plant at 166 S. Clark street, Chicago, as Wallace & Clohesey; that on or about July, 1886, Clohesey purchased Wallace's interest therein and agreed to pay him therefor about $2,000; that on or about the 1st day of June, 1886, and prior to the time of the purchase of said interest, Timothy C. Clohesey, the father, advanced about $1,500 to David T. Clohesey

with which was paid off certain notes secured by chattel mortgages against said printing establishment; that after the purchase by David T. Clohesey of Wallace's interest in said printing establishment, David T. Clohesey carried on said business in the name of Clohesey & Company, and so carried on and conducted the same from that time to the present date.

That Timothy C. Clohesey claims that he is the owner of said business; that Timothy C. Clohesey in 1886 was employed by the city of Chicago in the sewer department and had no knowledge of the printing business and never engaged therein and never devoted any time or attention to the same; that David T. Clohesey is a practical printer and has carried on and conducted said business ever since July, 1886, in the name of Clohesey & Company, and has managed said business and made contracts therein, and had entire charge of the same.

That before he took charge of the business of Clohesey & Company he was earning from $18 to $20 per week as foreman in a press room; and that since July, 1886, he has devoted his entire time and attention to the business which is now worth over $20,000; and that his services are reasonably worth $50 per week.

That no agreement was ever made between David T. Clohesey and Timothy Clohesey with reference to his compensation; that David T. Clohesey has never received to exceed $10 per week in said business and all his other earnings and accumulations have remained in said business; that David T. Clohesey is the owner of said business now located at 88 Fifth avenue, Chicago, Illinois; and that the pretended appropriation of said business and the transfer of the same to Timothy C. Clohesey was for the purpose of defrauding the creditors of David T. Clohesey in the collection of their claims; that there was never any foreclosure of the chattel mortgages on said business, but anything done in connection with said chattel mortgages for the purpose of investing Timothy C. Clohesey with the title to said business was illegal and void; and that the same was never properly sold and was never purchased in

any lawful manner by Timothy C. Clohesey; that David T. Clohesey simply pretended to carry on said business in the name of Clohesey & Company, and that all of said property is subject to the claims of the creditors of David T. Clohesey, for the satisfaction of their debts.

That ever since July, 1886, David T. Clohesey has been the active head of said printing business and has conducted and managed it just as before said date; and that all acts done in the name of Clohesey & Company were a mere pretense or sham for the purpose of covering up and concealing the interest of said David T. Clohesey in said business.

The bill also alleged that certain real estate standing in the names of Timothy C. Clohesey, the father, and Catherine Clohesey, the mother, of David T. Clohesey, was in fact the property of David T. Clohesey, and the prayer of the bill was the usual prayer of creditors' bills that said printing plant and said real estate be subjected to the payment of the complainant's debts.

On December 30, 1904, David T. Clohesey was adjudged a bankrupt by the Bankruptcy Court of the Northern District of Illinois. Joseph Grove was appointed trustee in bankruptcy and subsequently filed an intervening petition in the cause, the allegations of which were substantially the same as the allegations of the bill of complaint as amended.

The joint and several answer of the defendants denied the allegations of the bill of complaint, and as to the printing plant set forth that prior to July, 1886, there existed as valid subsisting liens upon said printing business located at 166 S. Clark street, Chicago, Illinois, certain chattel mortgages given to secure notes aggregating more than $2,000; and that said Timothy C. Clohesey purchased said notes and chattel mortgages with his own money, no part of which was the money of David T. Clohesey, or of any other person; and that as the owner of said notes and chattel mortgages he caused the same to be foreclosed in a regular and proper manner in accordance with law and the

provisions of said chattel mortgages, and upon a sale under such foreclosure proceedings, he purchased said printing establishment described in said chattel mortgages and took possession of the same, and ever since has been the sole and absolute owner thereof, and has carried on said business with his own funds; and that there was no agreement or understanding of any kind that David T. Clohesey had, or should have, or at any time might have, any interest in said business, or any part thereof; and denies that David T. Clohesey has been the managing head of said business and has conducted the same in the name of Clohesey & Company for the purpose of covering up and concealing the interest of said David T. Clohesey in said business.

That said Timothy C. Clohesey foreclosed said chattel mortgages and purchased the property covered thereby for the purpose of engaging in the printing business; that he had a large family consisting of himself and wife and six children, and it was with a desire of availing himself of the services of several of said children that he purchased and became the owner of said printing establishment; that he immediately took a daughter—Catherine Clohesey—from school and placed her in charge of said business as bookkeeper and cashier to look after the financial affairs of the business; that he opened up a bank account and granted authority to her to draw checks upon the same; and that she was the only one that had any control over said finances; that he placed another son—Timothy J. Clohesey—in said business, and he also had his son David T. Clohesey work for him in said business; and that all of said children during all the period aforesaid lived at home with said Timothy C. Clohesey; and that he has paid to each of them the sum of $10 per week for their personal spending money and has given to them their board and clothing; and that he has during all of the years aforesaid carried on said business with the aid and co-operation of said children, and while he is not a practical printer, nor has any technical knowledge of the business, that he is more than sixty years

of age and he has given to his children the benefit of his judgment and advice with regard to the care and management and policy of said business, and has superintended the financial affairs of said business and has seen that said business was conducted in a careful and conservative manner; that he has drawn from said business the sum of $35 per week for the support of his family and has used other large sums of money in his personal affairs; and that none of said children has any interest in said business.

That the increase of said business has not been due to the efforts of said David T. Clohesey, but said business has been increased and prospered solely through the careful management of said Catherine Clohesey and the wise supervision of Timothy C. Clohesey.

That the printing plant as covered by said chattel mortgages was destroyed by fire many years ago and the present plant is an entirely new plant purchased with moneys exclusively the moneys of Timothy C. Clohesey, derived by him, not from the carrying on of said printing business, but from moneys earned by him in real estate investments and as foreman in the sewer department of the city of Chicago.

Edward S. Cummings, for plaintiffs in error.

Harry A. Biossat, for defendants in error; Atwood, Pease & Loucks, of counsel.

Mr. Justice Smith delivered the opinion of the court.

Plaintiffs in error contend that the decree is contrary to the evidence and the law; and that the bill and intervening petition should have been dismissed for want of equity.

The record shows that there is but little controversy over the facts. The complainants and the intervening petitioner, Joseph Grove, trustee in bankruptcy of the estate of David T. Clohesey, called as their witnesses the plaintiffs in error, defendants below, as to the facts

out of which the equities of complainants' case are claimed to arise. Aside from the plaintiffs in error, complainants and intervening petitioner called Sadler, a mason, Burns, an architect, Hoppe, a carpenter, as to the real estate standing in the name of Catherine. Clohesey and Timothy C. Clohesey, the mother and father of David T. Clohesey, but the court found in its decree in favor of plaintiffs in error as to the real estate and as to that dismissed the bill for want of equity. No cross-errors are assigned. We therefore need pay no attention to the testimony of these witnesses.

It appears from the evidence that in 1885 complainant Spencer, George H. Wallace and David T. Clohesey were co-partners in the printing business and conducted the business for about a year. Wallace and Clohesey then purchased the interest of Spencer and continued to run the business for another year when Wallace, who attended the finances of the firm, became insane and disappeared. At the time Spencer's interest in the firm was purchased there were two chattel mortgages upon their plant. The first mortgage was dated September 15, 1885, and was given to W. H. Kretsinger to secure the notes of Spencer, Wallace and Clohesey, aggregating $1,500. The other mortgage was dated December 17, 1885, and was given to O. N. Blomgren to secure their note for $1,593.06. After the purchase of Spencer's interest and the disappearance of Wallace, David T. Clohesey informed his father Timothy C. Clohesey of the condition of the business, and of the existence of the chattel mortgages, and that Wallace had taken what money they had, and that the business would have to be closed out.

Without the knowledge of David T. Clohesey, his father purchased the chattel mortgages and acting under legal advice caused the mortgages to be foreclosed, and purchased the printing plant at the foreclosure sale. The business was closed for a time, but Clohesey, Sr., put his daughter Catherine in the

office as cashier and bookkeeper and with her assistance and the assistance of his sons, David T. and Timothy J. Clohesey, opened up the business and conducted it from that time until the bill in this case was filed, December 28, 1904. When Clohesey, Sr., foreclosed the mortgages and commenced the business, he opened a bank account in his own name and authorized his daughter to sign checks. During the entire period of about eighteen years that Clohesey, Sr., conducted the business in this manner, there was no formal agreement between him and his sons and his daughter as to their wages, but each drew from five to ten dollars per week for spending money. They all lived at home with their parents and received his or her board and clothing. Thirty-five dollars were drawn each week for family expenses.

The father was not a practical printer and left the details of the business largely to his sons and his daughter. The daughter, however, was mainly relied upon as the sons were more or less dissipated and were in a habit of absenting themselves from the business many times a year for three weeks or longer at a time, while the daughter attended to the business all the time.

The receipts from the business and rents derived from his real estate were all deposited by Clohesey, Sr., in the bank account, and any buildings erected or repairs or improvements made were paid for out of this account by checks drawn upon it. The evidence shows that this was a general bank account and that Clohesey, Sr., had no other.

All the witnesses testified that no one had any interest in the business except the father, Timothy C. Clohesey. The evidence tended to show that in 1886 the plant was worth about $6,000 and that at the time of the hearing of the case it was worth from $10,000 to $15,000.

The complainant obtained judgment against Wallace and David Clohesey in December, 1896, on their note

given to him. This judgment was revived on May 12, 1904, for $1,226.25, and execution was duly issued and returned no part satisfied.

Defendants in error urge that the chancellor's findings of fact will not be lightly disturbed, and will only be disturbed when manifestly against the weight of the evidence.

It is true that where there is a sharp conflict in the evidence over controverted questions of fact, and the trial court has an opportunity of seeing the witnesses and hearing their testimony as it is delivered orally, the findings of the court upon mere questions of fact will not ordinarily be disturbed on appeal unless such findings are clearly and manifestly against the preponderance of the evidence. In this case, however, plaintiffs in error were called by the complainant and intervening petitioner and their testimony constitutes the only evidence, substantially, upon which the alleged equity of the case rests. It is therefore a case where there is no conflict in the evidence and there was no occasion for the chancellor to judge of the credibility and weight of evidence of the respective witnesses. The chancellor was required to draw conclusions simply from the testimony of the witnesses. This, we think, can be done as well by an appellate tribunal as by the chancellor in this case, and the reason of the above rule does not exist in the case at bar. We consider ourselves free therefore to draw our own conclusions from the evidence without attaching any special weight to the findings of the chancellor.

It is contended further on behalf of defendants in error that in considering the evidence in the record we cannot consider the question of *laches* on the part of the complainant, because it is not pleaded as a defense. If that defense had been pleaded, it is urged, the complainant could have amended his bill so as to show fraudulent concealment.

We think, however, where the delay of eighteen years in asserting the alleged equitable right appears

on the face of the bill and in the evidence of complain-
ant offered in support thereof, we cannot dismiss that
fact from our consideration, for it is in this case
something more than a technical defense. It cannot
be ignored in considering the complainant's case. It
is a distinctive and peculiar feature of his case
which is wholly unexplained and unaccounted for in
the bill or in the evidence.

In Benson v. Dempster, 183 Ill. 297, it does not ap-
pear that the defense of delay was set up by answer
or otherwise by the defendant. It does appear by
the bill, as in the case at bar, that the father of the
complainant was guilty of gross *laches,* and the court
considers the inexcusable delay on the part of
complainant's ancestor, and his heirs, and holds that
"a court of equity will refuse relief on the ground
of lapse of time and its inability to do complete
justice."

In Brown v. Brown, 154 Ill. 35, the *laches* of com-
plainants appeared from the bill and it does not ap-
pear that it was set up and relied upon in any pleading
of the defendant. There it was sought to set aside
a deed made in August, 1865, and recorded in the fol-
lowing December. It appeared that for a period of
over twenty-six years complainants acquiesced in the
conveyance, and it was held that where a party had
slept upon his rights, or acquiesced for a great length
of time, a court of equity should refuse relief. And
so in Walker v. Carrington et al., 74 Ill. 446, the long
delay in filing the bill, showing acquiescence in the ad-
verse rights of appellant, barred the claim. It is true
that in the Walker case, *supra,* the defense was claimed
in the answer, but no specific facts were pleaded con-
stituting the defense, which did not appear in the bill.

We think, therefore, that inasmuch as the unex-
plained delay of complainant for eighteen years in
taking the necessary steps to assert his claim appears
in his bill and the evidence offered to sustain it, the
court in considering his case must view it in the light
of all the circumstances, and particularly in the light

of his action or acquiescence in the long continued, open and notorious possession by plaintiff in error Clohesey, Sr., of the plant and business which he now seeks to subject to the payment of his judgment. Spencer was a party to the chattel mortgages which were foreclosed. He made no effort to contest the title of Clohesey, Sr., under the foreclosure for more than eighteen years, during all of which period he knew that Clohesey, Sr., was claiming title to the property in the most notorious and open manner. Spencer's claim and the claims of the other creditors represented by the trustee in bankruptcy must be regarded, in our opinion, as tainted with staleness, and a court of equity should refuse relief on the ground of lapse of time and its inability to do complete justice.

Independently, however, of the question of *laches,* we do not think the complainant is entitled to relief on the evidence. No fraud on the part of Clohesey, Sr., is shown. There is nothing of a suspicious nature in his conduct in connection with the printing plant and business. What was done by him can as well be attributed to honest motives and fair dealings as the reverse, and when that can be done, it will be so considered.

When the affairs of the firm of Wallace and Clohesey came to the point that their business could not be continued it was natural that Clohesey, Sr., should endeavor to save something from the wreck, and perhaps the business itself. He had loaned to his son $1,000 to start him in the business, and this was totally lost unless he could save the business and continue it successfully. While it is insinuated that he purchased the plant at his own sale and that the sale was therefore void, no definite evidence was offered to show any fraud in that regard. The exact method and steps taken to foreclose the mortgage do not appear in the record. In the nature of things it was impossible to show the details of the foreclosure proceedings, owing to the great lapse of time. The mortgages were not assigned to Clohesey, Sr., and the

mortgagees therefore became trustees for the holder of the notes. It was for them to sell the property described in the mortgages under the powers contained in the mortgages for the payment of the indebtedness represented by the notes. This was done under the advice and direction of able and experienced counsel. Blomgren, one of the mortgagees, was called as a witness, but he could remember nothing about the transaction except that he had a mortgage and that "we got the money in trust and paid it out to the different concerns—other concerns." He did not remember any transaction with the elder Clohesey or what was done with the mortgage. He parted with the paper, but did not remember to whom he transferred it. The inference from the testimony in the record is that at the time the notes were purchased by Clohesey, Sr., some arrangement was made with the mortgagees for the foreclosure of the mortgages and that a sale of the property was had under the mortgages. In our opinion that sale should not be set aside for mere irregularities, if any, and held for naught at this late day on the evidence in the record.

It is urged on behalf of defendants in error that David T. Clohesey had no right to make a gift of his labor, skill and intelligence to his father in fraud of his creditors, and inasmuch as his father has received the benefit of his services, and the greater part of his earnings remained in the business, the printing plant should be sold as the decree provides. We cannot yield assent to this proposition from a legal point of view; nor do we think the evidence shows that David T. Clohesey's services, considering his habits and the uncertain and intermittent character of his services, were reasonably worth more than the evidence shows he received.

For the reasons given, the decree of the Superior Court is reversed and the cause is remanded with directions to dismiss the bill and intervening petition for want of equity.

*Reversed and remanded with directions.*