118:147 Ind I'

## THE JOHN MORRIS COMPANY

### *v.*

## CHARLES H. SOUTHWORTH *et al.*

*Filed at Ottawa October 29, 1894.*

1. LANDLORD AND TENANT—*liability for repair of premises becoming untenantable through casualty.* Under a lease which provides that if the premises "shall be rendered untenantable by * * * casualty, the lessor may, at his option, terminate this lease or repair such premises within thirty days, and failing so to do * * * the lease hereby created shall cease," damages resulting from the explosion of a boiler belonging to the landlord, and leased as part of the premises, without fault of the tenant, must fall upon the landlord.

2. SAME—*explosion of boiler not prima facie evidence of negligence.* The explosion of a steam boiler, leased as part of the premises, and used by the tenant, is not of itself *prima facie* evidence of the tenant's negligence.

*John Morris Co.* v. *Southworth,* 50 Ill. App. 429, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

FLOWER, SMITH & MUSGRAVE, for appellant:

The full operation of the last clause of the lease, providing that in case the premises should be rendered un-

tenantable by fire or other casualty the landlord should have the option to terminate the lease, or repair in thirty days, or, in case of his failure so to do, that the lease should be thereby terminated, is entirely consistent with the other clauses of the lease, and simply amounts to a proviso in case the premises, by fire or other casualty, should be rendered untenantable. 2 Parsons on Contracts, 516, 517; 3 Am. & Eng. Ency. of Law, 868; *Bolman* v. *Lohman*, 79 Ala. 63; *Bent* v. *Alexander*, 15 Mo. App. 181; 1 Wood on Landlord and Tenant, sec. 303; *McCarty* v. *Howell*, 24 Ill. 341; *Walker* v. *Tucker*, 70 id. 527; *Insurance Co.* v. *Kupfer*, 28 id. 332; *Packer* v. *Roberts*, 140 id. 9.

The rupture of this boiler was a casualty, within the meaning of the lease. Webster defines casualty as "that which comes without design or without being foreseen; misfortune occasioned by an accident." The American and English Encyclopedia defines casualty as "accident; that which comes by chance, or without design, or without being foreseen." *Waldeck* v. *Insurance Co.* 56 Wis. 96, exhibits an insurance policy in which a boiler explosion is explicitly called a casualty. In *Kelly* v. *Duffy*, 11 Atl. Rep. 244, a fire for which the tenant was not responsible, occurring while the premises were occupied by the tenant, was held to be an "inevitable casualty." See, also, *Hodgson* v. *Dexter*, 1 Cranch C. C. 109; *Phillips* v. *Sun, etc. Co.* 10 R. I. 458.

The casualty in question rendered the premises untenantable. Webster defines tenantable as "fit to be rented; in a state of repair suitable for a tenant." In *Kipp* v. *Merwin*, 52 N. Y. 542, it is held that occupation of the premises, after they were rendered untenantable, by a tenant, was not conclusive evidence that the premises were tenantable. See, also, *Sydam* v. *Jackson*, 54 N. Y. 450; *Tallman* v. *Murphy*, 120 id. 345.

The premises were leased for a printing, lithographing and stationery business, and "untenantable" used in the same lease must refer to such use.

The conduct of the landlord in authorizing the repairs to be made at his expense was such a construction of the lease and agreement as to the rights of the parties, as, being acted upon by the tenant, determines the question of interpretation. *Levers* v. *Cleary*, 75 Ill. 349 ; *M. E. Church* v. *Brose*, 104 id. 206 ; *People* v. *Murphy*, 119 id. 150 ; *Burgess* v. *Badger*, 124 id. 288 ; *Alexander* v. *Tolleston Club*, 110 id. 65 ; *Story* v. *Story*, 125 id. 608.

This explosion or rupture was not, in any event, *prima facie* evidence of the Morris Company's negligence, and hence the burden on that subject was upon appellees.

Explosion of a stationary boiler is never *prima facie* evidence of negligence. *Losee* v. *Buchanan*, 51 N. Y. 476.

But whatever the rule may be as to third persons, there can be no presumptions between the owner and the operator or user of a boiler. *Railroad Co.* v. *Moore*, 77 Ill. 217.

HUTCHINSON & LUFF, and FREDERICK ULLMANN, for appellees :

Where an agreement is partly written and in part printed, the preference is always given to the written part. In case of conflict the written portion will control in construing the contract. *Express Co.* v. *Pinckney*, 29 Ill. 392 ; *Robertson* v. *French*, 4 East, 360 ; *Alsager* v. *Dock Co.* 14 M. & W. 796.

Under the covenants of the lease the appellant was bound to repair all damages to the building from any cause excepting fire, cyclone, or the falling of the building from a cause other than its own fault or negligence. 1 Wood on Landlord and Tenant, secs. 367-370 ; 2 Platt on Leases, 186 ; *Phillips* v. *Stevens*, 16 Mass. 238.

The lease being sealed, appellant could only be released from its obligation by a contract under seal. *Barnett* v. *Barnes*, 73 Ill. 216 ; *Loach* v. *Farnum*, 90 id. 368.

Appellees were not estopped to deny an agreement to repair. There could be no estoppel without full knowledge of the facts, a fraudulent purpose, and a change of

conduct of appellant induced thereby. *Davidson* v. *Young*, 38 Ill. 145 ; *Flower* v. *Elwood*, 66 id. 438.

The explosion in question was not a casualty. A casualty is an act of God or the public enemy. A freshet, cyclone, lightning or an earthquake may cause a casualty. 1 Bouvier's Law Dic. 246; Story on Bailments, secs. 29, 240.

The explosion of the boiler was *prima facie* evidence of the negligence of appellant. *Railroad Co.* v. *Phillips*, 49 Ill. 234, and 55 id. 194.

PHILLIPS, J.: Premises known as Nos. 118 and 120 Monroe street, in the city of Chicago, were the property of John H. Southworth, of Springfield, Mass., and by him leased to the John Morris Company. · The building was about forty feet wide by one hundred and eighty-six feet long, and five stories high, and was used by the lessee in its business of printing, lithographing, book-binding, stationery, etc., and was heated by steam-pipes. The machinery used by the lessee was operated by an engine, which was supplied with steam from two tubular boilers about fourteen feet long and about four feet in diameter, which were placed in the rear of the basement, and were owned by the landlord and leased with the building.

The lease contains, among others, the following provisions : "In case of loss by fire, so as to render the premises untenantable, this lease may be terminated by either party hereto, unless it is mutually agreed to repair, and the same can be done in a reasonable time, so as not to utterly prevent the business from being prosecuted." After a provision as to payment of rent, which is partly printed and partly in writing : "Said rent to be *net*, above all expenditures, named or unnamed ; and to pay, in addition thereto, all the ground rents of said premises accruing during said term, under a certain lease thereof from L. C. Paine Freer to James S. Bassett, dated the 6th day of July, A. D. 1868, as the same shall become due and payable according to the terms of said lease ; also,

to pay for all repairs to said building, ordinary and extraordinary, inside and outside, including the roof thereof, and all taxes levied or assessed upon said premises during said term, and all special assessments thereon levied or assessed, and which shall be due and payable during said term, (including assessments made before but payable during said term,) provided the improvements for which said assessments are levied are made during or before the beginning of said term, and the premiums for insuring said building against fire, and insuring the plate glass therein, during said term, to the amount of $34,000, for the benefit of said party of the first part, in responsible companies to be chosen by him; but the party of the second part shall not be required to pay the taxes on said premises for more than three years, unless the term of this lease shall be extended; and in case said ground rent, taxes or premiums shall not be paid when due, the party of the first part may pay the same, and the amount so paid, with interest, shall be added to the rent, and collected as herein provided.   It is understood that the party of the second part shall not be required to repair loss or damage to said building by fire unless such loss or damage shall be caused by its neglect, nor any loss or damage by reason of a cyclone, or the falling of said building from any cause other than the fault or neglect of said party of the second part."   The material printed clauses are as follows : "And that it (party of the second part) will keep said premises in good repair   *  .*  * during the term of this lease at his own expense,   *   *   * and upon the termination of this lease in any way, will yield up said premises to said party of the first part in good condition (loss by fire and ordinary wear excepted)." "In case said premises shall be rendered untenantable by fire or other casualty, the lessor may, at his option, terminate this lease or repair said premises within thirty days, and failing so to do, or upon the destruction of said

premises by fire, the term hereby created shall cease and determine."

On the 10th of January, 1890, during the existence of the lease, one of these boilers exploded, doing much damage to the building, blowing out the glass and tearing great holes through the first and second floors, and leaving the building without heat or power, which caused a suspension of the lessee's business and necessitated repairs on the landlord's property, which were made at a cost of about $9527.86. On January 12 the lessee sent a telegram to the landlord, at Springfield, Mass., informing him of the damage, and saying: "Will restore building at cheapest cost, and charge to your account." This telegram was answered by one of appellees, C. H. Southworth, a son of the landlord, who said his father was not able to attend to business, and adding: "So please arrange to have done the necessary repairs to restore the building to its former condition." Other correspondence passed between the same parties.

From the time of the first communication, arrangements to proceed with the repairing were made, and it was soon well in progress towards completion. After arrangements for its completion were made, and on about February 3, 1890, C. H. Southworth addressed a letter to the lessee, asking for rent due February 1. This letter was replied to, and the lessee expressed surprise at its contents, "after the arrangement we made in regard to the restoration of your property, rendered necessary without any fault of ours." Much correspondence and negotiations between the parties, or the attorneys for the landlord and the tenant, were had, until the death of the landlord, in January, 1891, when appellees became his executors. Thereafter, as a result of threatened action on the part of the executors, the lessee filed a bill praying for an injunction against a declaration of forfeiture, and asking the court to determine who was liable for repairs, etc.

The evidence was conflicting as to the cause of the explosion and as to the agency of Charles H. Southworth. In addition to the conclusion to be drawn from the acts of Charles H. Southworth, his answering letters addressed to his father, saying his father was not able to attend to the business, etc., and the giving directions about it, it appears that in April previous to the explosion John H. Southworth, in a conversation with John Morris, the president of the lessee company, stated, in substance, he was out of health and was not able to attend to anything and had turned his business over to his son; that his son had control of his matters, and anything he did with the lessee, or that it did with the son, would be the same as doing it with him; that anything the son did in the future would be the same as if he did it.

A decree was entered finding that the lessee had reserved from its payment of rent the sum of $9524.54 as the amount of the cost of repairing, which, with interest thereon, amounted to $10,926.19, and that the lessee was not entitled to have the same set off against the rent, although expended for repairs, and ordered that in the event of a payment of said sum within thirty days the preliminary injunction be made perpetual, and finding due the executors the said sum of $10,926.19, and ordering execution therefor, etc. That decree was affirmed on appeal to the Appellate Court, and this appeal is prosecuted.

The principal question involved in this record is, who was liable for repairs—the landlord or the tenant? The clause in the lease which provides that "it is understood that the party of the second part shall not be required to repair loss or damage to said building by fire, unless such loss or damage shall be caused by its fault or negligence, nor any loss or damage by reason of a cyclone, or the falling of said building from any cause other than the fault or negligence of the said party of the second part," is to be construed with the other parts of the lease, so

that effect be given to the intent of the parties when entering into the contract, as expressed by the language used. To this end, in the construction given, one part must be so construed with reference to other portions that every part may stand, and, if it can be prevented, no part of it, either in words or sentences, shall be regarded as superfluous or void. *McCarty* v. *Howell,* 24 Ill. 342; *Walker* v. *Tucker,* 70 id. 527; *Galena Ins. Co.* v. *Kupfer,* 28 id. 332; *Packer* v. *Roberts,* 140 id. 9.

The landlord furnished the boilers in the building as a part of the leased property, and the evidence shows the lessee employed a competent, experienced engineer, who had long had charge of this particular engine and boiler, and the weight of proof does not disclose any negligence or mismanagement on the part of the engineer. On the contrary, the weight of proof shows, so far as such a fact can be determined, that a latent defect in the construction of the boiler was the primary cause of the explosion. For damage to the landlord, resulting from such latent defects in construction, no liability would exist on the part of the tenant, unless he had knowledge of the defect and negligently continued to use the boiler. No liability would exist against the tenant in this case, for damage caused by the explosion, without proof showing it guilty of negligence. The mere fact of the explosion is not of itself *prima facie* evidence of negligence.

The tenant's liability, under the facts appearing in this record, is not to be determined by the rule of negligence governing the case of common carriers of passengers and goods. The carrier of goods is an insurer of their safety, unless his extraordinary liability is limited by special contract; and the carrier of passengers is bound to observe the utmost care and diligence for their safety, and is responsible for the slightest neglect. Passengers are compelled to rely on the carrier for their personal safety, and public policy requires that the carrier must be held to the utmost possible care and diligence,

and courts have held the fact of injury being suffered by one on a carrier's train as a passenger should be regarded as *prima facie* evidence of liability. And this rule, as applicable to the duties of carriers of passengers, has been held to apply to persons lawfully at the platforms of their stations. The tenant had the right to use steam as a motive power. The vast manufacturing interests within the State are mainly dependent on such propelling force, and no reason can exist why one having a right to do a lawful act upon his own premises should be held responsible to another for injurious consequences that may result from it, unless he is guilty of actionable negligence. We are not disposed to hold that the mere explosion of a stationary boiler is of itself *prima facie* evidence of negligence. *Losee* v. *Buchanan*, 51 N. Y. 476; *Marshall* v. *Welwood*, 38 N. J. L. 339; *Walker* v. *Chicago, Rock Island and Pacific Railway Co.* 71 Iowa, 658; *Huff* v. *Austin et al.* 46 Ohio St. 386.

The first and last clauses of the lease as above quoted may be construed together. "In case of loss by fire, so as to render the premises untenantable, this lease may be terminated by either party hereto, unless it is mutually agreed to repair, and the same can be done in a reasonable time, so as not to utterly prevent the business from being prosecuted," is the first clause above quoted, and the last is: "In case said premises shall be rendered untenantable by fire or other casualty, the lessor may, at his option, terminate this lease or repair said premises within thirty days, and failing so to do, or upon the destruction of said premises by fire, the term hereby created shall cease and determine." These clauses are not inconsistent. Under the first clause, in case of loss by fire, rendering the premises untenantable, the lease may be terminated by either party, unless it is mutually agreed to repair, and the same can be done in a reasonable time, so as not to utterly prevent the business from being prosecuted. Under this clause the lessor is not

compelled to agree to repair, neither is the lessee com-
pelled to remain in possession and await repairs, if the
repairs utterly prevent the business from being prose-
cuted.   Whether repairs are made or not is to be deter-
mined by a mutual agreement between the parties, if the
condition of. the building, and repairing it, are not of a
character to utterly prevent the° business from being
prosecuted.   Under the second clause, if the building is
rendered untenantable, merely, but not to the extent of
utterly preventing the business from being prosecuted,
the tenant must still be liable for the rent, as the lessor
has the option of repairing the building within thirty
days or terminating the lease. ˙ A failure to repair within
thirty days would authorize the tenant to terminate the
lease.   There being no incongruity in these two provi-
sions, and the premises being rendered untenantable as
to a part thereof, the lessor had a right to exercise his
option, and repair, or the repairs might be made by
mutual agreement.

There being neither negligence nor default shown on
the part of the lessee, he will be presumed to have used
the greatest degree of care and diligence commensurate
with the circumstances attending the business in which he
was engaged.   The burden of proving the converse of that
presumption must rest on the lessor.   By the terms of the
lease a casualty which rendered the building untenant-
able for the entire purpose for which it was leased, and
the option of repairing which within thirty days was re-
served to the landlord, was one of the losses to be paid
by the lessor.   A casualty may be inevitable without hap-
pening by the act of God or caused by the public enemies
of the country.   Where the lessee is without negligence,
and is presumed to have used the greatest degree of care
the circumstances will permit, and an explosion such as
this occurs, it is, as to him, an inevitable casualty. (*Hodg-
son* v. *Dexter*, 1 Cranch C. C. 109; *Phillips* v. *Sun, etc. Co.* 10
R. I. 458; *Kelly* v. *Duffy*, 11 Atl. Rep. 244.) The explosion

must be regarded as the happening of a casualty causing damage to the building, etc., which, within the terms of the lease, was to be repaired by the lessor.

Under the evidence in this record it is shown that by the declarations of the lessor, John H. Southworth, made in April preceding this casualty, the lessee had a right to regard Charles H. Southworth as the agent of John H. Southworth. Whether Charles was aware of that conversation or not would not change its effect. The lessee had knowledge of that declaration, and had a right thereafter to treat with Charles as agent of his father. When, by telegram, the lessee sought to notify the father of the loss, the telegram was answered by Charles. The effect of his answer was to lead the lessee to believe he was acting as such agent. The lessee had the declaration of the father that Charles was such agent, and the future conduct of Charles tends strongly to impress us with the belief he acted as agent for his father. Under the facts disclosed in this record we must hold that he cannot be heard to disavow his acts as agent, nor could John H. Southworth be permitted to deny his authority in relation to business with appellant, after the declarations made by him. We therefore hold, from the evidence in this record, that the lessee was authorized to expend money in repairing the damage caused by this casualty, and the amount expended is not shown to be unreasonable.

We have discussed the questions of law as raised in the briefs and argument of this cause. On the face of the decree, however, we are unable to see how, under the issues as made by the bill and answer, a decree and an award of execution could be made against the complainant.

For the errors indicated, the decree of the Superior Court of Cook county and the judgment of the Appellate Court for the First District are reversed and the cause remanded.

*Reversed and remanded.*