### D. A. SCHULTE, INCORPORATED, *vs.* AMERICAN REALTY CORPORATION.

Suffolk.    March 24, 1926. — May 29, 1926.

Present: BRALEY, CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Landlord and Tenant,* Covenant for termination when unavoidable casualty renders premises unfit.

In a suit in equity to enjoin the defendant, lessor of a building, from interfering with the possession of the premises by the lessee, it appeared that a provision of the lease was that "in case the whole or any part of the demised premises or of said building be destroyed or damaged by fire or other unavoidable casualty, so as to render the same unfit for use and occupation . . . then this lease may, at the election of the lessor within a reasonable time, be terminated," and that following a fire the defendant had given the plaintiff notice that he elected to terminate the lease.   Upon facts found by a judge, it was *held*, that, it appearing that the premises could be restored by ordinary repairs made without unreasonable interruption of the lessee's business, there was no occasion for the enforcement of the provision in question entitling the landlord to reënter and oust the tenant; and that a decree for the plaintiff should be entered.

BILL IN EQUITY, filed in the Superior Court on February 27, 1925, to enjoin the defendant from attempting to cancel its two leases to the plaintiff and from interfering with possession by the plaintiff of the leased premises in the Briggs Building, numbered 293 Washington Street in Boston, Massachusetts.

In a Superior Court the suit was heard by *Morton,* J. Material facts found by him are stated in the opinion.   He reserved and reported the suit to this court for determination upon the pleadings, evidence, and findings of the fact.

*O. Storer, (J. J. Lucas* with him,) for the plaintiff.

*M. E. Bernkopf, (A. H. Grauman* with him,) for the defendant.

BRALEY, J.   The two leases, covering the premises hereinafter described under which the plaintiff was in possession for a term ending September 29, 1927, each contains the following covenant.

"This lease is made on condition that in case the whole or any part of the demised premises or of said building be destroyed or damaged by fire or other unavoidable casualty, so as to render the same unfit for use and occupation, or be taken, damaged or destroyed by public authority or be damaged or injured directly or consequentially by reason of anything lawfully done in pursuance of any public authority whereby either the lessor or the lessee may be entitled to compensation after the execution and before the termination thereof, then this lease may, at the election of the lessor within a reasonable time, be terminated."

A fire which occurred in the early morning of February 15, 1925, apparently started in the jewelry store between the ceiling of the basement space and the flooring of the street floor store.

The "plaintiff occupied on the street floor the corner store . . . with a frontage of approximately fourteen feet on Washington Street and approximately twenty-five feet on School Street. The plaintiff also had possession of basement space underneath the rear portion of said street floor, said basement space fronting on School Street to the extent of approximately nine feet and being approximately thirteen feet in length. Next to the plaintiff's store on Washington Street and a part of said building was a jewelry store approximately sixteen feet along Washington Street and running back from Washington Street to a depth of approximately twenty feet. The jewelry store occupied basement space running under both the plaintiff's street floor store and the jewelry store street floor, which basement space had a frontage of approximately twenty-two feet along Washington Street and had a depth running back from Washington Street of thirteen feet six inches under the plaintiff's street floor store, and of approximately twenty feet under the jewelry store street floor. In the left hand rear portion of the basement space occupied by the jewelry store is a partition enclosing an elevator shaft and the elevator machinery, which elevator serves the floors of said building above the stores. The basement of the jewelry store was apparently occupied for storage purposes and was

reached by a trap door and a steep ladderlike contrivance running down into the basement from the jewelry store. There was no other entrance to this basement. . . .

"The fire . . . followed a course along said beams or joists above the ceiling of the jewelry store basement space running approximately from School Street across nearly the entire length of the jewelry store basement and beyond the partition into the space occupied by the elevator shaft and machinery . . . . Firemen in responding to the alarm for the fire jimmied open the doors . . . . As a result of the fire and the acts of the firemen, the ceiling, consisting of composition board and plaster, of the basement space occupied by the jewelry store was burnt and torn down nearly its entire length of twenty-two feet and to a depth of five to eight feet at its widest point. This left exposed to view to that extent the street store floors of the plaintiff's store and of the jewelry store, and also three joists or beams supporting the street store floors. The three beams which were exposed were approximately fourteen inches apart from center to center, the one nearest Washington Street being six inches by twelve inches and the other two beams three inches by twelve inches. The flooring and the three joists were scorched, charred and blackened for nearly the entire length of the basement, nearly twenty-two feet. For a distance of five to eight feet in the center of the said basement space the middle joist or beam which was exposed to view was burnt and charred so that its original width of three inches was burnt away leaving approximately two inches in width. The inside portions of the two other beams or joists in this latter area were also burnt and charred, so that their strength was impaired but not sufficiently to endanger the safety of the flooring above. Above this area of five to eight feet in length by five or six feet in width the flooring of the plaintiff's street floor store was burnt through or cut through by the firemen, as a result of which there was, immediately after the fire, a hole of approximately four to four and one half feet in length and two and one half to three feet in width opening from the plaintiff's street store floor directly into the basement occupied by the jewelry store. This hole in

the floor of the plaintiff's store, the flooring about the edges of which on the under side were charred, was located directly back of one of the display counters used by the plaintiff in its business and occupied space where clerks employed by the plaintiff passed to and fro back of the counter . . . .

"The fire, in following its course as above stated, burned through and beyond the partition setting off the elevator shaft of the building and somewhat burned and charred the beams and under side of the flooring of the street floor level above the elevator machinery. The elevator gate on the street floor was broken by the fireman, and immediately after the fire the elevator cage was at the bottom of the shaft in the basement and the elevator machinery was out of commission so that the elevator could not be operated.

"Immediately after the fire employees of the plaintiff secured and placed over the hole in the floor of the plaintiff's street floor premises pieces of boards and about ten o'clock the following day . . . had carpenters at work laying a new flooring covering the said hole in the floor and all the flooring behind all show cases. The plaintiff opened its place of business as usual on Monday morning and sold merchandise as usual over the counter notwithstanding the laying of the new flooring by the carpenters."

Repairs were also made on the elevator which was again in operation shortly after the fire.

After "the fire the basement space occupied by the jewelry store was in no condition to be immediately used and occupied but it could have been put into condition for use and occupation speedily by clearing up the debris on the floor and clearing away the broken electric wires." The "elevator and the elevator machinery were in no condition to be used but repairs were made and the elevator restored to use within a few hours. Immediately after the fire part of the demised premises immediately above, and for a few inches surrounding, the hole burnt or torn in the floor of the plaintiff's store was not in condition to be used and occupied but this condition could be and was remedied by the laying of a new flooring within a few hours. Business in the

plaintiff's store was conducted by stepping on those boards temporarily covering the hole, and by stepping around or over the hole while the new flooring was being laid, and all the usual trade was handled both before and while the new flooring was being laid."

The defendant on February 17, 1925, gave notice to the plaintiff that it elected to terminate the lease, and the present action is to obtain relief from the proposed forfeiture.

It was a question of fact, whether the fire rendered the premises unfit for use within the meaning of the covenant which the trial court although finding the facts, did not expressly decide. But, all the facts being before us, we can review the case, and, giving due weight to the findings, order such decree to be entered as justice may require. *Weinstein* v. *Miller*, 249 Mass. 516, 520.

The building undoubtedly was damaged by fire. But where, as in the case at bar, the premises can be restored by ordinary repairs made without unreasonable interruption of the lessee's business, there is no breach of the covenant in question entitling the landlord to reënter and oust the tenant. *Wolff* v. *Turner*, 6 Ga. App. 366. *Acme Ground Rent Co.* v. *Werner*, 151 Wis. 417.

A decree with costs is to be entered enjoining the defendant, its servants or agents, from interfering with the plaintiff's possession. *Lundin* v. *Schoeffel*, 167 Mass. 465. *Gordon* v. *Richardson*, 185 Mass. 492, 495.

*Ordered accordingly.*