The Cuneo Press, Inc., Appellant, v. Warshawsky & Company, and R. E. L. Building Corporation, Appellees.

Gen. No. 47,764.

First District, First Division.

February 1, 1960.

Released for publication February 24, 1960.

Rothschild, Hart, Stevens, and Barry, of Chicago (John Paul Stevens and William G. Myers, of counsel) for plaintiff-appellant.

Dwight McKay, of Chicago (Sidney Z. Karasik, of counsel) for defendants-appellees.

JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from a judgment of the Circuit Court of Cook County overruling objections to and approving a master's report, and entering a decree dismissing the cause for want of equity.

The Cuneo Press, Inc., hereafter referred to as "Cuneo," had brought an action against Warshawsky & Company and R. E. L. Building Corporation, hereafter referred to as defendants, for an injunction seeking to restrain defendant Warshawsky from maintaining a "wrecking plant and junk yard" on the premises owned by the R. E. L. Building Corporation and leased by Warshawsky, and to restrain defendant R. E. L. Building Corporation from authorizing any person to conduct such a business on the property in question at any time in the future.

From the record it appears that the parties occupy property in the City of Chicago on opposite sides of Cermak Road (22nd Street) between Canal Street on the east and the Chicago River on the west. Cermak Road runs east and west. Canal Street runs north and south, as does the Chicago River at this point. Between Canal Street and the river, Cermak Road is intersected only by Grove Street, which runs southwesterly and northeasterly. Grove Street also intersects Canal Street immediately to the north of Cermak Road. The vicinity is part of an industrial or manufacturing area. Both Cermak Road and Canal Street are heavily traveled arterial streets accommodating trucks, passenger automobiles and bus lines of the Chicago Transit Authority.

Cuneo owns, and at all material times has owned, property facing on and extending southerly from the south side of Cermak Road. This property (hereinafter called the "Cuneo property") is bounded on the

165

east by Canal Street and on the west by the river. It is intersected and divided by Grove Street. The Cuneo property consists of approximately 400,000 square feet, and on this property Cuneo operates a printing and binding establishment consisting of five separate buildings. It employs 2,350 to 2,500 persons, including factory and office workers. Many of its employees are women. Although Cuneo has other plants across the country, its only photographic and art studios are at this location. It does art work, engraving, etching and editorial work on the premises. The customers visiting the Cuneo property are publishers, advertising people and others interested in the reproduction of literary and art material.

In 1949 the defendant R. E. L. Building Corporation leased to Warshawsky property known as 456 West Cermak Road, which property faces on and extends northerly from the north side of Cermak Road. This property (hereafter referred to as the "Warshawsky property") is bounded on the west by the river, and on the east the south 260 feet are bounded by the west line of Grove Street, and the north 80 feet are bounded by Canal Street. The Warshawsky property, consisting of approximately 62,000 square feet, is directly across Cermak Road from the Cuneo property. The southeast corner of the Warshawsky property is improved with a brick building which extends 37 feet along Cermak Road and encroaches thereon. The only other improvements on the property are weather-beaten wooden frame sheds. The balance of the property is an open yard.

Prior to 1949 the Warshawsky property was used as a lumber yard with comparatively small quantities of lumber neatly stacked in the open portion of the property. In its operation on the property in question Warshawsky purchases old automobiles and trucks,

wrecks and dismantles them, strips them of whatever parts it deems salable, stores and sells such parts, and disposes of the remaining portions of the automobiles to steel mills or brokers in ferrous metals, non-ferrous metals, rubber and glass. Warshawsky buys individual autos and trucks which individual persons bring in for sale. The cars and trucks thus purchased are then stored until ready to be wrecked. The next step in the Warshawsky operation is the wrecking of the vehicles. Cars are lifted up on a hoist and dismantled. Such parts as have resale value are removed. This includes hubcaps, wheels, bumper guards, tires, radiators, batteries and any and all parts and accessories which might be sold. The removed parts are stored on the premises. When this salvaging operation is complete, the balance of the car, including the frame and body stock, is sent over to the shears to be cut up. The shells or hulls of the cars, together with upholstery and any other part of the car which cannot otherwise be disposed of, are then burned by smoldering fires at ground level on the open portion of the premises. The parts and accessories which Warshawsky is able to salvage and which are stored on the premises are offered for sale to anyone who might want them. Individual parts are sold to individual persons. Some of the parts are sold from the premises in question. Others are sold from another outlet maintained by Warshawsky at 1900 South State Street.

When the non-salvageable portions of the cars are cut up into the size required by steel mills, the old iron and other scrap metals are thrown into piles in the open yard on the Warshawsky property. These piles are higher than the eight or nine foot fence on the property. Warshawsky sells its ferrous metals to steel mills or brokers dealing in scrap metals. Its non-ferrous metals, such as batteries, radiators, wiring, door handles and ornamental pieces, are sold to

non-ferrous dealers. Warshawsky also sells tires, seats and glass.

North of Cermak Road there is a switch track which is within the right of way of Grove Street and is located practically adjacent to and parallel to the line of the Warshawsky property. Gondola cars are set on this last switch track in front of the Warshawsky property and these cars are loaded over the fence with scrap iron by a crane. The portion of Grove Street lying north of Cermak Road is unpaved and has no sidewalks. That portion of Grove Street lying south of Cermak Road and running between Cuneo buildings is paved. The part of this portion of Grove Street lying westerly of the "lead" track of the railroad and adjacent to a Cuneo building has a gate across its entrance at Cermak Road and a guardhouse south of the gate manned by a Cuneo employee. On the portion of Grove Street adjacent to the Cuneo buildings, trucks are parked for loading or unloading in connection with Cuneo's operation. In that portion of Grove Street south of the Cuneo gate automobiles are parked. On that portion of Grove Street adjacent to Warshawsky, trucks are parked in connection with Warshawsky's operation. In connection with both Cuneo's and Warshawsky's operations the trucks are parked either parallel or diagonal to the street lines and at times block the street.

Cuneo spends thousands of dollars for paving, maintaining and cleaning Grove Street (near its plant), cleaning Cermak Road, the front of its plant and the river bank. Warshawsky drops pieces of scrap material during the process of loading gondola cars and there is no evidence that it makes any effort to clean up its premises or surroundings. In addition, its river wall is not maintained in good repair.

The master found that the ordinances of the City of Chicago applicable to junk dealers and junk yards are

168

not applicable to the Warshawsky operation which is not the operation of a junk yard; that Warshawsky's operation is a lawful and useful business located in an area to which it is compatible; and that Cuneo has not established any actual or substantial or special damage to it caused by Warshawsky.

Cuneo's complaint is in two counts. The second count alleged that the defendants maintained a common law nuisance. The allegations in this count have been abandoned by the plaintiff in this court. The first count is that the operation in question is a junk yard subject to the Chicago ordinances regulating junk yards; that those ordinances prohibited the location of a junk yard on the property in question and that the plaintiff has sustained special damages.

█ In order to recover the plaintiff must prove two propositions: (1) that Warshawsky's operation was in violation of the ordinances of the City of Chicago, and (2) that Cuneo suffered special and unique damages to its property thereby. The master found against Cuneo on both propositions.

A great deal of the argument before this court is based upon whether or not the Warshawsky yard is a junk yard within the meaning of the Chicago ordinances regulating junk yards (Municipal Code of Chicago, chapter 143, sections 143–1, et seq.). We will assume, without deciding, that the master's findings with reference to the first proposition are erroneous and consider whether or not Cuneo has proved special damages of the character which would entitle it to injunctional relief.

Warshawsky has been conducting this operation on its property for more than ten years. There is nothing in the record to indicate that its operation has been conducted in any way different than at the present time. During the ten years Warshawsky improved the

property by erecting a two-story brick building, one floor being used for storage and a washroom, and the second floor as an apartment for rental purposes, and also a one-story frame shed extending north from the brick building about 120 feet, together with an open steel fence facing Grove Street.

 The law in Illinois with reference to the right of a private person to obtain the aid of equity in enjoining the continued operation of a business because it is in violation of a city ordinance is well settled. In Irving-Austin Bldg. Corp. v. Village of Homebuilders, Inc., 312 Ill. App. 179, Mr. Justice Scanlan says:

"The law is well established that the enforcement of city ordinances is not one of the functions of a court of chancery and that an injunction will not be issued to restrain a mere violation of a city ordinance; that the enforcement of an ordinance of any city, village or town organized under the law of this State is vested in the municipality enacting such ordinance. In Joseph v. Wieland Dairy Co., 297 Ill. 574, the court said (p. 579): 'The rule is thoroughly established that equity will not entertain jurisdiction and issue an injunction unless the complainant shows that he will be injured if relief is not granted, and the allegations must be clear and distinct that substantial injury will be sustained. (Allott v. American Strawboard Co., 237 Ill. 55; Springer v. Walters, 139 Ill. 419.) A private citizen cannot call upon a court of equity to enjoin an injury threatened to purely public rights. (Springer v. Walters, supra; City of Chicago v. Union Bldg. Ass'n, 102 Ill. 379.) So he cannot maintain an action at law for a public nuisance unless he has been personally injured, and in such case *the special injury is the gist of the action, and unless it is alleged and proved there can be no recovery.* (McDonald v. English, 85 Ill. 232. . . .' (Italics ours.)"

170

In Klumpp v. Rhoads, 362 Ill. 412, at p. 416, the court says:

"When a business creates conditions which clearly render the appropriate enjoyment of surrounding property impossible, the rights of others are invaded, and equity will restrain the persistent pursuit of such injuries. If the damages are of a nature which cannot be adequately compensated for in a suit at law, equity will afford relief by injunction. On the other hand, lawful and useful business may not be stopped on account of trifling or imaginary annoyances which do not constitute real injury. If the right to relief is doubtful, either as to the law or under the facts proved, equitable relief will not be granted. (Off v. Exposition Coaster, Inc., 336 Ill. 100; Phelps v. Winch, 309 Ill. 158.) A private citizen cannot maintain an action to restrain a public nuisance unless he is particularly and specially injured in a manner distinct from the injury suffered by him in common with the public at large. Joseph v. Wieland Dairy Co., 297 Ill. 574; Hoyt v. McLaughlin, 250 Ill. 442."

In Vulcan Detinning Co. v. St. Clair, 315 Ill. 40, at p. 44, the court says:

"In order to entitle one to relief by injunction against unlawful interference with his business positive and substantial injury must be shown, and where it appears that the injury is not of an irreparable nature and that the wrongs suffered by the plaintiff may be fully and adequately redressed by an action at law for recovery of damages, relief by injunction should be denied. (High on Injunctions,—4th ed.— sec. 1415f.) Injunction is an extraordinary remedy, and where human liberty is involved the writ should be used with great caution."

In the case before us the plaintiff offered the testimony of Ernest H. Lyons, an expert real estate ap-

171

praiser. He testified that in 1947 he had appraised the value of the Cuneo land at $1.50 per square foot and that in 1957 he appraised the value of the same land at $1.25 per square foot. He testified that the depreciation in value was due to a number of factors, among them being the neighborhood depreciation due to the type of use of the Warshawsky property but not entirely due to that; and that he mentions among other factors which would be responsible for the depreciation that the buildings in the Cuneo plant are getting older; that nice new modern printing buildings would increase the value of the land; that the approach on Grove Street is cumbersome; and that both Warshawsky and Cuneo "hog" the street. There was testimony in the record that there are five automobile wrecking yards within a mile from the intersection of Cermak Road and Archer Avenue, which is one block east of Canal Street. Mr. Lyons further testified that he could not give a percentage figure of the effect of the Warshawsky operations in relation to the other factors in causing the drop from $1.50 to $1.25 per square foot in the appraisal of the Cuneo property. The master found that this evidence was too vague and was not sufficient to support any claim of special damage to Cuneo under the rule that the allegations and proof of special damage necessary to support the intervention of equity must be clear and distinct and proved by substantial evidence.

Cuneo also in order to substantiate its complaint that it had suffered special injuries to its business and employee relations offered the testimony of Frank H. Ingram, a management consultant specializing in labor and industrial relations. He testified that he was familiar with the location of the Cuneo plant and the Warshawsky property; that the Cuneo plant employs 2,350 employees; that 2,000 are employed in the factory, of whom 500 are women; that the office

has 185 employees, 85 or 90 of whom are women; that of the 500 factory women 312 work days and 188 work nights; that about 80% of the factory workers are colored. He testified that the Warshawsky property has an effect upon the hiring of personnel at the Cuneo plant; that women do not like standing around corners in the dark where there are such operations; that the type of employees who work at Warshawsky's is of the laboring type frequently with torn clothes; that the smoke and smoldering fires would make for a bad aroma and bad impression on people who would be seeking employment.

The master found with reference to the testimony of Mr. Ingram:

". . . [in the opinion of the witness] a plant will not grow with the type of employees desired if the plant is located in a slum neighborhood and there are police problems related to the neighborhood since the neighborhood has a bad reputation and women hesitate to take employment. It was his opinion that there are two solutions: one, better police protection and clean up of the neighborhood, or, two, removal of the plant. It is a matter of appearance and police protection.

"(a) This consultant considered the Warshawsky operation as having a detrimental effect on the neighborhood because:

"1. Women do not like standing around the corners waiting in the dark for buses where there are such establishments (there is no stop at Warshawsky; the stop is at Canal Street approximately 200 feet to the east of Warshawsky).

"2. The type of its employees do not inspire confidence in women, not because they are dishonest, but because of their appearance, their clothes are torn.

"3. There are smoldering fires.

"(b) In addition to the presence of the Warshawsky operation as a depressing factor, the consultant considered as such factors the facts that the Cuneo plant is on the edge of a substandard neighborhood and the Cuneo plant is old and outmoded. He pointed out that the Hall Printing Company had no similar employment problem because it is located in a better neighborhood and has a better location in which to recruit help, and that, in his opinion, the location of an operation like Warshawsky's near the Hall plant would not be nearly as adverse to the Hall plant as to the Cuneo plant because he does not think that the single item of such an operation is that influencing, although it has more effect in an area which is depressed anyway."

The master also found "there is no evidence of any crimes committed in the neighborhood and no evidence upon which to base any conclusion that there is not adequate police protection" and "there is no evidence that the health of any employee of Cuneo has been impaired by the Warshawsky operation." The foregoing findings were approved by the trial court.

There is no evidence in the record that any of the employees of Cuneo were disturbed by the Warshawsky operation. There is evidence in the record given by the owner of a restaurant located at the northwest corner of 22nd and Canal streets that for ten years he has owned and operated the restaurant; that he has not noticed any odors or gases coming from the Warshawsky property; that the fires on the Warshawsky property create considerable smoke, but that it has no effect on the operation of his restaurant; and that while the Warshawsky operation makes noise it does not bother him nor his customers.

One Ridgell testified that he had previously lived at 456 West Cermak Road in the second floor apart-

174

ment in the brick building at the corner of 22nd and Grove streets on the Warshawsky property for a period of eight years; that he lived there with his wife and son; that during that period he was not bothered by odors, gases, smoke, noise or dust from the Warshawsky operation.

██ The defendants have pleaded and here argue that Cuneo is barred by laches from proceeding in its case. Cuneo argues, on the other hand, that laches cannot be considered because of the peculiar facts and circumstances in this case, inasmuch as there is nothing to show that the position of the defendants is any different than it was on the day they commenced the operations. There is in the record, however, evidence that a building and shed have been erected on the Warshawsky property and, without determining whether or not there is laches involved which is sufficient to bar the action, we call attention to what was said in Korson v. Stathopulos, 334 Ill. 193, at p. 199:

"Where a party has knowledge of facts entitling him to equitable relief and does nothing to assert his rights for eleven years, giving no valid excuse for his delay, his *laches* will bar a right to relief. (Breit v. Yeaton, 101 Ill. 242.) A court of equity will refuse to aid stale demands where a party has slept on his rights. If one calls upon a court of equity he must show reasonable diligence. Where this is absent such a court will not grant relief. (Oehmich v. Hedstrom, 251 Ill. 481; Hamilton v. Hamilton, 231 Ill. 128; Brown v. Brown, 154 Ill. 35; McDonald v. Stow, 109 Ill. 40.)"

and in Carstens v. City of Wood River, 344 Ill. 319, where the court said, at p. 323:

"One who seeks equitable relief against interference with an easement must act with reasonable promptness after learning of the proposed violation of his rights and cannot stand idly by and permit the structures

175

complained of to be completed at large cost without objecting. Equity, in all cases where a mandatory injunction is sought, will strictly require that the application for relief be promptly made, and a failure to assert such right, without sufficient excuse therefor, until after large expenditure of moneys, operates as a bar to relief in a court of equity."

It is true that while the injunction here is not in the strict sense a mandatory injunction, nevertheless it would preclude the defendant Warshawsky from continuing the operation of a business which has been in operation for a period of ten years without anything in the record indicating that any complaint was made by Cuneo or any action taken by it. In order for a court of equity to issue an injunction in such a case the facts must be clearly established and the law be without question. City of Pana v. Central Washed Coal Co., 260 Ill. 111. In considering such a case the courts should proceed with great caution.

█ It is also the rule in Illinois that where the findings of a master have been approved by the trial court they will not be disturbed by a reviewing court unless they are against the manifest weight of the evidence. 2 I. L. P., Appeal and Error, sec. 791; Allendorf v. Daily, 6 Ill.2d 577; Ginther v. Duginger, 6 Ill.2d 474; Rizzo v. Rizzo, 3 Ill.2d 291; Johnson v. Johnson, 1 Ill.2d 319; Rose v. Dolejs, 1 Ill.2d 280; Midland Electric Coal Corp. v. County of Knox, 1 Ill.2d 200; Freymark v. Handke, 415 Ill. 360.

Plaintiff argues that the master's findings of fact are consistent with the plaintiff's theory of the case, and that the dispute on this appeal is whether the master was correct in that portion of his report designated as "Conclusions" that, to-wit:

"(3) Warshawsky's operation is a lawful and useful business and is located in an area to which it is compatible. The manner of its operation has not been

shown to be inconsistent with its location and in any event, the evidence for Cuneo concerns only Warshawsky's presence in the area (and not its manner of operation) as one depressing factor considered together with other such factors in the area.

"(4) Cuneo has not established any actual or substantial or special damage to it caused by Warshawsky and upon which to predicate its request for injunctive relief. The asserted causes of depreciation of the Cuneo land are not limited to the presence of the Warshawsky operation and the evidence is too vague to support any claim of special damages to Cuneo.

"(5) Cuneo's personnel problems are not by the evidence attributable solely to the presence of Warshawsky operation, and the removal of the Warshawsky operation would leave Cuneo's problem in regard to the type of employees it seeks still unsolved . . . because, among other things, the character of the neighborhood would not be changed; it would still be a neighborhood of heavy uses and adjacent to a substandard neighborhood; nor would the appearance or age of the Cuneo buildings be changed, the heavy vehicular traffic lessened, nor the improper parking on Grove Street relieved."

The plaintiff argues that these conclusions of the master are a matter of law. With this contention we cannot agree.

The master in that portion of his report designated as "Findings" set out the testimony of Lyons with reference to the depreciation in value of the property and of Ingram with reference to the difficulties of the plaintiff with their personnel. The master recommended that the bill be dismissed for want of equity. Objections were filed to the report and were argued and permitted to stand as exceptions, which were overruled by the court after argument. The finding of the master that there was not sufficient

177

evidence to support the contention of the plaintiff falls within the rule that a master's findings, when approved by the chancellor, will not be disturbed where they are not against the manifest weight of the evidence. A determination, designated either "finding" or "conclusion," as to whether or not there is sufficient evidence to support the burden assumed by the plaintiff under the issues in any case is the ordinary function of the trier of fact—whether a jury, master or judge. After a careful consideration of the evidence before the master we conclude that his findings are not against the manifest weight of the evidence. He could properly find, as he did, that the evidence as to both issues did not show any special damage to the plaintiff sufficient to justify injunctive relief, considering that the granting of such relief would destroy a business operation which had been continued in the same manner for a period in excess of ten years without any objection having been made by the plaintiff or without the plaintiff having attempted in any way to stop such operation. It might logically be found that the conditions adverted to by Cuneo were conditions which were brought about by the general deterioration of the locality, including the Cuneo plant, during the ten year period. The complaint seeking an injunction was properly dismissed.

The judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

DEMPSEY, P. J. and SCHWARTZ, J., concur.