Presbyterian Distribution Service, a Non-Profit Association for Distribution of Religious Literature, Plaintiff-Appellant, v. Chicago National Bank, Successor Trustee Under Trust No. 10460, and William Farnsworth, an Individual Doing Business as Harold H. Egan & Company, Defendants-Appellees.

### Gen. No. 48,050.

First District, Third Division.

November 23, 1960.

Rehearing denied December 14, 1960.

Yowell, Long, Macdonald & Yowell, of Chicago (John J. Yowell and G. Kent Yowell, of counsel) for appellant.

Harold A. Fein, of Chicago, for appellees.

MR. PRESIDING JUSTICE SCHWARTZ delivered the opinion of the court.

This is an appeal from a decree in a suit by a lessee, seeking a declaratory judgment that its lease had terminated pursuant to the untenantability provision thereof and for other incidental relief. Lessor filed a counterclaim for rent, cost of repairs and attorneys' fees. The chancellor found for lessor, from which decree plaintiff has appealed.

Plaintiff is a voluntary unincorporated association which distributes religious literature for the Presbyterian Church. Defendant Chicago National Bank held title as trustee and defendant William Farnsworth was managing agent of a building at 71–73 East Lake Street, Chicago, in which the demised premises were located. The lease was executed by

Farnsworth on January 26, 1956 covering the entire third floor of the building for a period of three years commencing May 1, 1956 at a rental of $18,000 payable in monthly installments of $500.

Plaintiff also leased premises on the third floor of an adjoining and abutting building and a doorway was constructed between the two buildings to enable plaintiff to conduct its business expeditiously in both rented areas. However, in 1957 the adjoining building was torn down and plaintiff's lease of those premises was cancelled. That made the demised space inadequate for plaintiff and it voluntarily vacated the premises in August 1957. Plaintiff engaged an agent to find a subtenant and defendant Farnsworth agreed to help. Meanwhile, plaintiff continued to pay its rent pursuant to the lease. Early in November 1957 plaintiff permitted a theatrical costumer to store six trunks in the otherwise empty premises.

On November 14, 1957, approximately 550 square feet of ceiling in the demised premises fell to the floor, together with five or six electric light fixtures and wiring. The cause of the accident was not definitely ascertained, but plaintiff believes the age of the building was the causal factor, whereas defendants attribute the accident to plaintiff's overloading the floor space under the ceiling. The debris was removed within several days after the occurrence, but nothing was done to restore the premises until defendant Farnsworth in April 1958 authorized repairs which were completed within four days to a week at a cost of $744.25. Meanwhile plaintiff continued to pay rent until March 1958, when, it asserts, it first became aware of the accident.

On March 6, 1958, plaintiff's attorney wrote to defendant Farnsworth, advising him of plaintiff's knowledge of the occurrence and that he regarded plaintiff's lease as terminated by reason of the fact

152

that the premises had become untenantable under his interpretation of the clause relating to untenantability. He also demanded repayment of rents paid by plaintiff for November and December 1957 and January and February 1958, together with interest. Defendants' attorney replied that in his view the premises were not rendered untenantable by reason of the accident; that the falling plaster may have been caused by plaintiff's having overloaded the floor; that plaintiff was expected to pay for repairs thus necessitated under its lease provisions; that no rent refund would be made, and that unless the March rent was paid by March 12, 1958, judgment therefor would be confessed.

On March 14, 1958, defendants caused a confession judgment to be entered against plaintiff in the Municipal court of Chicago for the March rent which plaintiff had refused to pay. That judgment was satisfied by garnishment. Plaintiff subsequently filed the instant suit. In addition to the relief before mentioned, plaintiff also sought an injunction restraining defendants from enforcing their judgment and from taking any other legal action pending final disposition by the court. On May 2, 1958, after plaintiff's suit had been filed but before the court ruled on the prayer for injunctive relief, defendants caused another confession of judgment to be entered for the April and May rent which plaintiff had refused to pay. Following a hearing on May 9, 1958, a preliminary injunction issued restraining defendants from enforcing their judgment for the March rent and from taking further legal action outside of the cause then pending. That order was vacated upon defendants' motion and defendants were awarded damages in the sum of $673 by reason of the preliminary injunction. From that award plaintiff appealed and this court reversed, holding that defendants had failed to raise their objections to the injunctive order before it was issued,

153

which precluded them from recovering damages therefor. 21 Ill.App.2d 188, 157 N.E.2d 789.

Meanwhile, defendants filed their answer and counterclaim. Plaintiff filed a reply to defendants' answer and an answer to defendants' counterclaim, to which answer defendants replied. Plaintiff filed a supplemental complaint which defendants answered. The cause was referred to a master in chancery. The master made his report, objections thereto were filed and overruled, exceptions were filed and overruled, and a decree was entered, finding inter alia that the premises were not rendered untenantable as defined in the lease by reason of the accident; that plaintiff was required to repair the premises under the terms of the lease; that plaintiff was liable for costs, charges and expenses including attorneys' fees incurred by defendant Chicago National Bank; that plaintiff was indebted to defendant bank for rent for April and May 1958, for which a judgment was entered in the Municipal court, and for the unpaid portion of stipulated rent for the balance of the rental period, and that plaintiff was entitled to a credit of $703.10 by reason of the Appellate court mandate in the injunction suit to which we have referred. It is from that decree that plaintiff prosecutes its appeal.

Plaintiff contends, first, that the chancellor erroneously construed the lease and that he should have found that it terminated by reason of the casualty which rendered the premises untenantable and that plaintiff was not obligated to restore the premises following the casualty. Clause 13 of the lease provides, in part, that if the premises are rendered untenantable by fire or other casualty, the lessor has several options under which (a) he may terminate the lease within 30 days after the occurrence or (b) he may elect to effect repairs and restoration of the premises within 90 days after he is permitted to enter

154

the premises, abating rent on a per diem basis while the premises are untenantable. If the lessor elects to repair but fails to complete such repairs within 90 days, either lessor or lessee may terminate the lease as of the date of fire or casualty by giving notice to the other party not later than 100 days after lessor is enabled to take possession of the premises.

■ What must first be answered is whether the premises ever became untenantable by reason of the fallen ceiling. That was a question of fact to be decided by the master and chancellor. Puskoris v. Gulik, 4 Ill.App.2d 83, 123 N.E.2d 340; D. A. Schulte, Inc. v. American Realty Corp., 256 Mass. 258, 152 N. E. 233, 235.

■ Untenantability has been defined as a condition which exists when destruction of demised premises is of such a nature that it cannot be used for the purposes for which it was rented and cannot be restored to a fit condition by ordinary repairs made without unreasonable interruption of the lessee's use. Puskoris v. Gulik, supra; Luis v. Ada Lodge No. 3, Independent Order of Odd Fellows, 77 Idaho 392, 294 P.2d 1095, 1098; Millen Hotel Co. v. Gray, 67 Ga. App. 38, 19 S.E.2d 428, 429; Basketeria Stores, Inc. v. Shelton, 199 N. C. 746, 155 S. E. 863, 864; Barry v. Herring, 153 Md. 457, 138 Atl. 266, 269; D. A. Schulte, Inc. v. American Realty Corp., supra; 51 C. J. S., Landlord & Tenant, sec. 99b (1947), at page 672.

■ The chancellor's findings in this regard, based on the master's findings and report, were that 550 square feet of ceiling of the total rental area of 6300 square feet had fallen; that five or six electric light fixtures had fallen with the ceiling; that plaintiff was not deprived of the use of the premises other than of a limited area; and that necessary repairs required but a short time to complete. It was on those facts that the master and chancellor concluded that the

155

premises had not become untenantable. The finding that the cost of repairs was in the modest sum of $744.25, compared with the apparent value of the premises evidenced by the rental of $18,000 for the lease term; together with the fact that the lease had over one year to run before expiration, could also have been considered by the master and chancellor as pertinent factors bearing upon the question of untenantability. See Barry v. Herring, supra.

The debris fell over an area which had been used by plaintiff when it occupied the premises for packaging and shipping its printed literature, and plaintiff argues that it could not have used that part of the premises until the ceiling was reconstructed, fixtures replaced, and electric power restored. It argues that to become untenantable, it was not necessary that all the premises be destroyed, relying upon John Morris Co. v. Southworth, 154 Ill. 118, 127, 39 N. E. 1099. The issue is that of untenantability, whether the damage occurred to all or a part of the premises. As we have said, that is a question of fact. The Southworth case does not hold to the contrary. The master and chancellor further found that the premises were not rendered dangerous or hazardous by reason of the occurrence. There was evidence that no part of the floor or building was in any way obstructed, jeopardized or damaged by the accident. Had plaintiff still occupied the premises, the floor space upon which its operations presumably were performed was left undamaged and still available. It was shown that electricity was shut off as a safety measure during the period between the accident and restoration of the ceiling and fixtures; that electric service was still available in all other parts of the premises; and that repairs could have been effected to the wiring within a short period of time. There was further evidence

156

that the affected area was illuminated by natural light through nearby windows.

■ The finding that the premises were not rendered untenantable by the fallen ceiling and fixtures cannot be said to be against the manifest weight of the evidence and will not be disturbed. Ginther v. Duginger, 6 Ill.2d 474, 129 N.E.2d 147. Cuneo Press, Inc. v. Warshawsky & Co., 24 Ill.App.2d 163, 164 N.E.2d 258. The finding of the decree that plaintiff remained liable for rent for the balance of the term must therefore be sustained.

■ ■ Plaintiff argues that defendants were not entitled to recover rents accruing after they filed their counterclaim because their pleadings failed to request such relief and because they failed to file a supplemental counterclaim therefor at the end of the rental period. In their counterclaim, defendants requested "the payment of all rent accrued under the . . . lease on and after March 1, 1958," which, they urge, supports their recovery either on the theory of anticipatory breach of the lease or because total rent had actually accrued at the time of the entry of the decree, since the term had by that time expired. We think that defendants' counterclaim placed in issue the question of all rents accruing on and after March 1, 1958, which included rents accrued up to and including the time of the decision. The chancery court, having obtained jurisdiction of the cause, properly retained such jurisdiction for final determination of all matters at issue. Kelly v. Galbraith, 186 Ill. 593, 58 N. E. 431.

By its terms the lease expired April 30, 1959. The master's report is dated August 18, 1959, well beyond the expiration date. No evidence was heard subsequent to August 20, 1958, until the re-reference relative to attorneys' fees was made. There was no suggestion by plaintiff at any time during the course of

157

the master's hearings before that date or at any time thereafter that the ownership of the property had in any way changed; that plaintiff had paid any rent accruing on or after March 1, 1958; that the premises had in the meantime been rented to others; or, as was the case in Wohl v. Yelen, 22 Ill.App.2d 455, 161 N.E.2d 339, upon which plaintiff relies, that plaintiff had secured a subtenant willing to assume its term under the lease whom defendants refused to accept. Nothing therefore had occurred which affected defendants' rights under the counterclaim. If plaintiff was in possession of any facts or information to the contrary, it could have brought them to the master's attention while the matter was before him. While a supplemental counterclaim and hearing would have been a more desirable procedure, it would have afforded plaintiff no greater opportunity to present all defenses against the decree for rent falling due after the filing of the counterclaim. The relief decreed was suited to the nature of the case and the facts as they existed at the close of the litigation. Kelly v. Galbraith, supra.

■ Plaintiff contends that the decree erroneously gave judgment on a judgment at law for the April and May 1958 rents due defendants from plaintiff, entered as confession judgments in the Municipal court of Chicago. It says that this was error because those judgments were void as having been entered at law against a voluntary unincorporated association which cannot be sued at law, relying upon Lohrum v. Grand Lodge of Brotherhood of Railroad Trainmen, 16 Ill.App.2d 186, 147 N.E.2d 707, and Moskal v. New Era Commercial Ass'n, 228 Ill. App. 278. There is no contention that plaintiff had paid these rents or that its liability therefor had been extinguished in any way, aside from the alleged lease termination. As we have noted, defendants' counterclaim requested payment of

158

all rent accrued under the lease on and after March 1, 1958, which would include rents covered by the disputed Municipal court judgments. The master found that plaintiff was indebted to defendants for an amount due on those judgments of $1132.50 plus interest at five percent from May 2, 1958 and costs assessed therein. While the judgments were improper, they represented rent due and for which defendants could make a claim. The decree therefore properly found that plaintiff was indebted to defendant trustee bank for rent for the months of April and May 1958. This conclusion is fortified by the fact that the master's report and the decree set forth findings of plaintiff's indebtedness for rent for those months and do not rely on the judgments as such. Inclusion of attorneys' fees for those judgments should be excluded from the decree.

Plaintiff argues that it was not obligated to restore the premises following the casualty and in this contention it must be sustained. The lease contained a covenant that lessee would keep the demised premises in good repair at its own expense during the term of the lease. This covenant must be read together with an additional covenant in the lease that upon its termination in any way, lessee would yield up the premises to lessor in good condition, loss by fire and ordinary wear excepted. There was evidence that the building was between fifty and seventy years old. Plaintiff attributes the fallen ceiling to old age, but there was no proof of this.

██ Defendants offered some evidence that the floor below the fallen ceiling had been overloaded by plaintiff at one time during its occupancy of the premises. There was no evidence that there was a causal connection between overloading the floor and the ceiling which gave way above it. Under those circumstances, defendants have not shown the condition to

159

have been caused other than by ordinary wear, for which plaintiff cannot be held responsible. Junction Mining Co. v. Springfield Junction Coal Co., 222 Ill. 600, 78 N. E. 902; Kehl v. Illinois Doughnut & Cake Co., 308 Ill. App. 318, 31 N.E.2d 359. Accordingly, the charge for such repairs, $744.25, must be credited to plaintiff.

■ Plaintiff also urges as error the inclusion of attorneys' fees in the decree, contending that defendants' counterclaim fails to contain any substantial averments of fact necessary to state any such cause of action either at law or in equity as required by section 31 of the Civil Practice Act. Ill. Rev. Stat., ch. 110, sec. 31 (1959). Plaintiff's position in this regard cannot be sustained. Defendants' counterclaim sets out, inter alia, a provision of the lease wherein lessee agreed to "pay upon demand all Lessor's costs, charges and expenses, including the fees of counsel . . . incurred in enforcing Lessee's obligations hereunder or incurred by Lessor in any litigation . . . in which Lessee causes Lessor, without Lessor's fault, to become involved or concerned." In their prayer for relief they ask recovery of "the fees of defendants' counsel . . . heretofore incurred and which may be hereafter incurred in enforcing the plaintiff's obligations under said lease." Thus there was a sufficient basis for allowing attorneys' fees.

■ Plaintiff argues that defendants may not recover attorneys' fees because the counterclaim fails to allege that they had ever made a demand for such sums and had failed to show that any such fees had been incurred or paid by defendants. In support of its contention, plaintiff cites cases dealing largely with debtor-creditor relations, which hold generally that a cause of action may not be pursued until it has accrued. The reason for the rule is that a debtor may pay his obligation before a creditor acquires the right

160

to demand payment. In the instant case, however, the facts are significantly different. It is true that under the provisions of the lease, defendants could not recover any costs, charges, expenses or attorneys' fees until there had been a finding whereby plaintiff was held bound by the covenants of the lease irrespective of the occurrence of the casualty. Such a finding was made by the master. When the master's report was approved by the chancellor and exceptions thereto had been overruled, the cause of action for attorneys' fees must be considered to have accrued to defendants, and it was then that the chancellor ordered a re-reference to the master for hearings and a report with regard to attorneys' fees. If plaintiff considered itself to have been prejudiced by reason of this re-reference before a formal demand for fees had been made by defendants, it was incumbent upon plaintiff to object to the proceeding at the time the re-reference was made and to set forth clearly the matter of which it complained.

Moreover, we see no purpose to be served by requiring a decree to be entered solely upon liability for rent and repairs and then to require a new suit to be filed for the purpose of ascertaining the amount of costs, charges, expenses and attorneys' fees incurred in the previous proceeding. The procedure which plaintiff suggests could conceivably increase its costs. Our Civil Practice Act at section 44(1) provides, in part, that "if a cause of action is one heretofore cognizable only after another cause of action has been prosecuted to a conclusion, the two causes of action may be joined; but the court shall grant relief only in accordance with the relative substantive rights of the parties." Ill. Rev. Stat., ch. 110, sec. 44(1) (1959). Under the policy of the act of allowing a party to seek all the relief to which he may be entitled in a single proceeding, we think the instant proceeding was equitable and proper. Young v. Wilkinson, 18 Ill.2d 428, 164 N.E.2d 39.

Plaintiff maintains that there is no evidence in the record to show that any attorneys' fees had been incurred or paid by defendants. During his examination of an expert witness with regard to compensation, defendants' attorney said that his own testimony would be that he had no fixed agreement with his client with respect to the amount of compensation to be paid him, but that he would submit a statement on a time basis and base the fee upon such allowance as the court may approve after the master's report was submitted. Upon his cross-examination by plaintiff's attorney, defendants' attorney testified to the accuracy of the foregoing statement and amplified it by stating that if the court allowed no fee there would be a billing nevertheless based upon a "reasonable" fee. It is clear that defendants incurred attorneys' fees.

Plaintiff contends that the attorneys' fee in the amount of $4763 awarded to defendants was unwarranted and excessive. Defendants assert that such amount is supported by detailed evidence in the record. It is a familiar rule that a reviewing court may apply its own independent judgment in considering the question of the propriety of attorney's fees. Lee v. Lomax, 219 Ill. 218, 76 N. E. 377; Metheny v. Bohn, 164 Ill. 495, 45 N. E. 1011; In re Estate of Hoyman, Gen. No. 48030, opinion filed October 19, 1960; In re Estate of James, 10 Ill.App.2d 232, 134 N.E.2d 638; Gilbert v. Lloyd, 170 Ill. App. 436. As was said in In re Estate of Jones, 28 Misc. 599, 59 N. Y. Supp. 1020, cited with approval in In re Estate of Hoyman, supra, compensation to be paid an attorney is not alone dependent upon his ability or success but the court should also take into consideration the amount involved in the controversy. The amount awarded defendants as attorneys' fees in the instant

case almost equalled two-thirds of the amount in controversy between the parties. The allowance was based on a fee of $35 per hour for the senior counsel and $20 per hour for the junior. This would be reasonable, except that the amount here involved is relatively small. We think that this fee should be reduced by approximately 25 percent to $3500.

Plaintiff contends that although the body of the decree recites that plaintiff was entitled to a credit upon its indebtedness to defendants of $703.10 by reason of the result in its favor in its previous appeal, 21 Ill.App.2d 188, 157 N.E.2d 789, no credit for that amount appears in the judgment. Defendants make no answer to that contention, and since no mention of this credit was made in the decree, it will be assumed that plaintiff's point is correct and the judgment should be modified to reflect that credit.

Inasmuch as certain issues were erroneously found for defendants, as noted in the foregoing opinion, adjustments in the decree become necessary. We will therefore reverse the decree and remand the cause to the trial court with directions to modify the award of rent payable under the balance of the lease term to include the April and May 1958 rent and to disregard the judgments awarding rent for those months together with attorneys' fees and costs included in the Municipal court judgments; to delete the charge against plaintiff of $744.25 for repairs to the premises; to reduce the attorneys' fees allowance to $3500; and to credit plaintiff's indebtedness with $703.10 by reason of the previous appeal. Costs in this court shall be divided two-thirds against plaintiff and one-third against defendants.

The decree is reversed in part and affirmed in part, and the cause is remanded with directions to modify the decree in accordance with our conclusions, and for

such other and further proceedings as are not inconsistent with the views and conclusions herein expressed.

Decree reversed in part and affirmed in part, and cause remanded with directions.

McCORMICK and DEMPSEY, JJ., concur.